T. B. Case, offered by the defendant, had been taken, under the act of congress of 1789 (1 Stat. 88), ex parte, on account of the residence of the witnesses more than one hundred miles from the place of trial, and that the names of three of the plaintiffs did not appear in the caption or any part of the depositions. He said great strictness had always been required in depositions taken under that act, and he thought this omission fatal. He held that it was necessary to specify the names of all the parties to the suit in the caption or some part of the depositions, to the end that it might appear on their face that the testimony was taken in the same suit. The depositions were rejected; but it appearing that they were material, the court on the application of defendant granted a continuance, and gave him leave to retake the depositions. Depositions rejected.

NOTE. If the name of one of the defendants be omitted in the caption of the deposition, it cannot be read in evidence in the cause. Smith v. Coleman [Case No. 13,029]; Brown v. Piatt [Id. 2,026]. In the caption of a deposition, all parties, both plaintiffs and defendants, must be individually and correctly named. Haskins v. Smith, 17 Vt. 263. The caption of a deposition taken by a plaintiff must state the names of all the defendants. Swift v. Cobb, 10 Vt. 282. The caption should be correct in naming the suit; but where from the facts there can be no uncertainty as to the case, the deposition should be admitted. Buckingham v. Burgess [Case No. 2,088]. In Allen v. Blunt [Id. 217], it was said to be doubtful whether a caption is not insufficient, by describing the action as against one, when it was against two, and so entered and defended, though with service since only on one. A mistake in the name of the plaintiff or defendant, referring to him as plaintiff or defendant, the name being truly stated in the title, is no ground for rejecting a deposition. Voce v. Lawrence [Id. 16,979]. The authority to take testimony under the act of congress has always been construed strictly, and therefore it is necessary to establish that all the requisitions of the law have been complied with before such testimony is admissible. Bell v. Morrison. 1 Pet. [26 U. S.] 351; Harris v. Wall, 7 How. [48 U. S.] 704, 705; The Thomas v. U. S. [Case No. 13,919]. The authority conferred on the magistrate by the act is special, and the facts calling for the exercise of it should appear upon the face of the instrument. and not be left to parol proof. Harris v. Wall. 7 How. [48 U. S.] 705. The certificate of the magistrate is good evidence of the facts stated therein, so as to entitle the deposition to be read, if all the necessary facts are there sufficiently disclosed. Bell v. Morrison, 1 Pet. [26 U. S.] 355; Patapsco Ins. Co. v. Southgate, 5 Pet. [30 U. S.] 617. A deposition cannot be rejected because it does not appear that the commissioner had been sworn. Commissioners are officers appointed by the courts of the United States, and their official acts are prima facie valid. Hoyt v. Hammeken, 14 How. [55 U. S.] 349, 350. Prima facie the officer is to be presumed de facto and de jure, such as he, by his official act, describes himself to be. This is according to universal practice in taking depositions authorized by statute, unless the statute itself indicates the evidence, that shall accompany the act showing its authority. The act of 1789 requires no such authentication: and if upon the face of the certificate it appears that the person before whom the deposition was taken, was an officer authorized by the act of congress to take the same, it

is all that can be required in the first instance. Ruggles v. Bucknor [Case No. 12.115]; Fowler v. Merrill, 11 How. [52 U. S.] 375. The officer taking the deposition is presumed to know the residence of the party entitled to notice, and if he certifies that the adverse party or attorney is not within one hundred miles, that is prima facie sufficient to dispense with notice. But the certificate may be controverted by parol proof with regard to stated facts. of which the magistrate is not supposed to have official knowledge; and therefore if it be proved that the adverse party or attorney, did actually live within one hundred miles, or was temporarily within that distance to the knowledge of the magistrate, and might have been served with notice, the effect would be to set aside the deposition. Dick v. Runnels, 5 How. [46 U. S.] 9. A notice left at the residence of either would be good. Id. The judge of the probate court of Mississippi. the same being a court of record and having a seal, is the judge of a county court, within the meaning of the act of 1789, and one of the officers authorized to take depositions. Fowler v. Merrill, 11 How. [52 U. S.] 393. A judge of a county court having power to administer oaths, may do so in any county in the state. Voce v. Lawrence [supra]. As to requisites of act of congress, see Harris v. Wall, 7 How. [48 U. S.] 704, 705. As the deposition must be reduced to writing by the magistrate or the deponent in his presence. it is almost superfluous to observe that it will be a fatal objection if the depositions be written by a party to the suit or his agent. counsel, or attorney. The law for wise and obvious reasons forbids it: because to allow it, would be to place it in the power of an adroit counsel, to give a coloring and effect to the statement of a witness not intended by the witness himself, and which he may not be able to discover at the time. As to depositions under act of congress, see Russell v. Ashley [Case No. 12.150]; Merrill v. Dawson [Id. 9,-469]; Rainer v. Haynes [Id. 11,536]; Marstin v. McRea [Id. 9,141].

## Case No. 17,249.

### The WASP.

#### [1 Gall. 140.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

FORFEITURE OF VESSEL—INTERDICTED PORTS.

A vessel sailing to an interdicted port, unless by permission of the president, on the public service, was liable to forfeiture, under the 3d section of the act of June 28. 1809, c. 9 [2 Stat. 550]. Under the same act British ports were permitted ports.

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel against the brig Wasp, Foxwell Cutts and others, claimants. The case was brought in the district court for the violation of the act of congress of June 28, 1809, and the vessel was condemned. Case unreported.]

G. Blake, for the United States.
R. G. Amory, for claimants.

STORY, Circuit Justice. The libel contains two counts, founded on the 3d section of the act of 28th June. 1809, c. 9. The first count alleges, that the brig departed from Charleston in South Carolina, with a

cargo, to an interdicted port, to wit, Liverpool in Great Britain, without a clearance for said port. The second count alleges that the brig departed from said Charleston, with a cargo on board, for a permitted port, to wit, Liverpool in Great Britain, without giving bond as required by the act aforesaid. It appears, that on the 16th of March, 1810, the brig, having a full cargo of cotton on board, cleared out from Charleston, South Carolina; bound for Boston; and after her departure, proceeded to Liverpool, and there discharged her cargo. The only testimony in the case is the mate's, and he alleges no distress of weather, or other excuse, for the voyage to Liverpool; I must therefore take it for true, that the original destination was for Liverpool. It is contended on behalf of the claimants, that Liverpool was, by virtue of the president's proclamation of 9th August, 1809, an interdicted port, and consequently there could be no forfeiture under the 3d section for such a voyage. Now admitting that Liverpool was an interdicted port, I incline to think that on a careful examination of the 3d section it will be found to cover the case. That section prohibits the departure of any vessels to an interdicted port, except such as by the president's permission should proceed thereto on the public service; and also prohibits the departure for a permitted port, without giving bonds not to proceed to an interdicted port during the voyage. Then comes a declaratory clause, that "if any ship or vessel shall, contrary to the provisions of this section, depart from any port of the United States, without clearance, or without having given bond in the manner above mentioned, such ship or vessel, together with her cargo shall be wholly forfeited," &c. Now it seems to me, that a departure on a voyage "without clearance," in this section, must mean a clearance for the foreign voyage, on which the vessel is destined; and if it be a foreign voyage to an interdicted port, it is contrary to the provisions of the section, unless authorized by the president of the United States. But by the decision of this court in the case of The Orono [Case No. 10,585], it is established, that the proclamation of the 9th August, 1809, did not revive the nonintercourse as to Great Britain, and consequently Liverpool, at the time of the sailing of the brig, was a permitted port. Not having given bond, as the act required, the brig must therefore be condemned.

Decree affirmed, with costs.

---

WASS v. The CALIFORNIA. See Cases Nos. 2,312 and 2,313.

WASS (ROFF v.). See Cases Nos. 11,999 and 12,000.

WASSELL (DUPAS v.). See Case No. 4,182.

WASSELL (PIKE v.). See Case No. 11,164.

W. A. SUMNER. See Case No. 4,288.

WATAGA. The (DENNISON v.). See Case No. 3,799.

---

# Case No. 17,250.

## The WATCHFUL.

[Brown. Adm. 469.] [1]

District Court, E. D. Michigan.    Feb., 1874.

GENERAL AVERAGE—LOSS OF DECK LOAD.

Where by the bill of lading it is agreed that a portion of the cargo shall be carried on deck, the vessel must contribute for the loss of the deck load by jettison.

[Cited in The May & Eva, 6 Fed. 629; The John H. Cannon, 51 Fed. 47.]

On exceptions to the libel of the Frankfort Iron Company for general average. October 23d, 1871, libellant shipped on board the schooner Watchful, at Frankfort, Michigan, 160 tons of iron ore for Detroit. By the bill of lading it was provided that twenty-five tons of the ore should be carried on the deck. The schooner proceeded on her voyage with twenty-five tons of ore stowed on deck accordingly, and when on Lake Huron, off Saginaw Bay, she encountered a storm, on account of which she was obliged to throw the deck load overboard for the safety of the vessel, and the same was wholly lost. The schooner arrived at Detroit in safety, and the balance of the ore was delivered to the consignee and the freight paid. There is no question but that the jettison was necessary, nor but that the loss of the ore, under the circumstances, would constitute a claim for general average, but for the fact that it was stowed on deck.

Mr. John Atkinson, for the exceptions.

The libel seeks to hold the vessel on two grounds: First, that by the custom of her trade; and, second, by express agreement in the bill of lading, it was provided that the iron jettisoned should be carried on deck. Where an agreement is express and unambiguous, custom cannot be shown. The object of usage is to interpret the language of contracts, in the absence of express stipulations, or when the meaning is equivocal and obscure. 1 Greenl. Ev. § 292; 2 Bouv. Dict. 615; The Reeside [Case No. 11,657]. See, also, Taylor v. Briggs. 2 Car. & P. 525; Smith v. Wilson, 3 Barn. & Adol. 728; Hone v. Mutual Safety Ins. Co., 1 Sandf. (S. C.) 137; Ware v. Hayward Rubber Co., 3 Allen. 84; Symonds v. Lloyd, 6 C. B. (N. S.) 691; Winn v. Chamberlin, 32 Vt. 318; The Milwaukee Belle [Case No. 9,627]; Sayward v. Stevens, 3 Gray, 103. If these cases are law, the libellant is remitted to its contract alone for relief. Under the English law, until the case of Gould v. Oliver, 4 Bing. N. C. 134, arose, it was a well recognized rule that no contribution could be had for goods carried on

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]